**FILED**

**JUN 1 6 2014**

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | Criminal No. 14-cr106(JEB) |
| v. : | Violation: |
| : | 18 U.S.C. § 1343 (Wire Fraud) |
| MARIA HERRMANN, : | |
| : | 28 U.S.C. § 2461(c) (Criminal Forfeiture) |
| Defendant. : | |

## STATEMENT OF THE OFFENSE

Pursuant to Rule 11 of the Federal Rules of Criminal Procedure, defendant Maria Herrmann ("HERRMANN") and the United States agree and stipulate that at all times relevant to the offense:

### Relevant Entities and Individuals

1. HERRMANN was a resident of Washington, D.C.

2. Charitable Foundation A and its successor entities (collectively, the "Foundation") was a non-profit charitable organization that promoted civic engagement. The Foundation had offices located in Washington, D.C.

### Background – The E-Store

3. Beginning in or about August 2003, HERRMANN was employed as an independent contractor by the Foundation.

4. As part of her job responsibilities, to generate revenue for the Foundation, HERRMANN operated an "E-Store" on the internet site eBay.

1

5. Initially, HERRMANN operated the E-Store by auctioning, on eBay, various goods donated to the Foundation. Beginning in or about June 2004, HERRMANN further used the E-Store to sell (on eBay) travel and vacation packages on consignment from a partner business.

6. Revenue from the E-Store was paid into a PayPal account in the name of the Foundation (the "Foundation PayPal Account"). As part of her job responsibilities, (a) HERRMANN had password-protected control of the Foundation PayPal Account, and (b) HERRMANN was to transfer funds – funds representing the proceeds of the E-Store – from the Foundation PayPal account controlled by HERRMANN to the Foundation's bank account on a periodic basis, about once per month.

7. HERRMANN had and used a credit/debit card issued in her name associated with the Foundation PayPal Account controlled by HERRMANN (the "PayPal Credit Card"). HERRMANN paid the bill for the PayPal Credit Card from the Foundation PayPal Account.

8. As part of her job responsibilities, HERRMANN provided to others at the Foundation periodic reports of the E-Store's gross and net revenue on or about a monthly basis.

9. HERRMANN was paid a base rate of $3,333 per month as well as an incentive payment based on the reported performance of the E-Store. For example, for invoices dated between October 20, 2004, and April 1, 2008, HERRMANN billed the Foundation, and was paid, $126,654.00 in base rate and $134,796.80 in incentive payments for a total of $261,450.80 in total payments in a three and a half-year period.

### The Scheme and Artifice

10. Beginning no later than in or about May 2004, and continuing through in or about June 2008, HERRMANN knowingly and willfully devised and intended to devise an unlawful

scheme to defraud the Foundation, and to obtain money and property of the Foundation by means of materially false and fraudulent pretenses, representations, and promises.

## Manner and Means

11.     It was part of HERRMANN's scheme that HERRMANN would and did embezzle money from the Foundation for her personal use and benefit through various means, including (a) by sending wires and electronic fund transfers ("EFTs") from the Foundation PayPal Account to HERRMANN's personal bank account and personal PayPal accounts, (b) by using the PayPal Credit Card to make unauthorized purchases for the personal use and benefit of HERRMANN and her relatives, and (c) by using the PayPal Credit Card to purchase U.S. Postal Service money orders, which HERRMANN then deposited in her personal bank account for her personal use and benefit.

12.     It was further part of HERRMANN's scheme that HERRMANN would and did cause the balance on the PayPal Credit Card to be paid from the Foundation PayPal Account, thereby paying for HERRMANN's unauthorized purchases with the Foundation's funds.

13.     It was further part of HERRMANN's scheme that HERRMANN would and did conceal her embezzlement by, among other things, making false and fraudulent representations to the Foundation on HERRMANN's periodic monthly reports about the E-Store's gross and net revenue. Among other things, HERRMANN disguised her embezzlement by underreporting the E-Store's revenue to the Foundation.

14.     Between in or about May 2004, and in or about June 2008, HERRMANN transmitted, and caused to be transmitted, about 204 wires and EFTs from the Foundation PayPal

Account to HERRMANN's personal bank account and personal PayPal account for her personal use and benefit. The total value of those wires and EFTs was $316,216.22.

15. Between in or about May 2004, and in or about June 2008, HERRMANN made numerous unauthorized purchases for the personal use and benefit of HERRMANN and her relatives. HERRMANN then paid for the costs of such unauthorized personal purchases from the Foundation PayPal Account. HERRMANN asserts, and the United States does not dispute, that the total value of such purchases was at least $140,285.24.

16. Among other things, HERRMANN's unauthorized purchases, ultimately paid for from the Foundation PayPal Account, included spending on personal expenses on vacations and personal trips to New Mexico, Hawaii, New Orleans, Florida, and Ohio.

17. Among other things, HERRMANN's unauthorized personal spending, ultimately paid for from the Foundation PayPal Account, included spending on various personal goods and services, including the following:

   a. Between on or about October 11, 2006, and on or about April 22, 2008, HERRMANN made approximately 16 different unauthorized purchases totaling approximately $7,875 from BodySmith Personal Training, a Washington, D.C. gym, for her personal use and benefit;

   b. Beginning on or about May 28, 2004, and continuing through on or about March 11, 2008, HERRMANN made approximately 38 different unauthorized purchases totaling approximately $5,760 from Tails of the City, a Washington, D.C. pet care provider, for her personal use and benefit;

    c. Beginning on or about July 21, 2007, and continuing through on or about May 27, 2008, HERRMANN made approximately 25 different unauthorized payments totaling $2,710 to 4inmates.com, which payments were for the personal use and benefit of an incarcerated close family member of HERRMANN;

    d. Beginning on or about June 22, 2005, and continuing through on or about June 3, 2008, HERRMANN made approximately 31 different unauthorized purchases totaling approximately $2,092.29 from various pet supplies retailers (Petco, Only Natural Pet Store, and Paws Pet Provisions) for her personal use and benefit;

    e. Between on or about October 30, 2005, and on or about January 29, 2008, HERRMANN made over 15 different unauthorized purchases totaling approximately $1,415 from gourmet coffee retailer Illy Café, for her personal use and benefit; and

    f. Between on or about May 27, 2006, and on or about May 6, 2008, HERRMANN made approximately 9 different unauthorized purchases totaling approximately $1,365.33 from Kim's Dry Cleaners in Washington, D.C., for her personal use and benefit.

18. Between in or about January and June, 2008, HERRMANN used the PayPal Credit Card to purchase U.S. Postal Service money orders worth $64,600, which money orders HERRMANN then deposited and used for her personal use and benefit.

19. HERRMANN asserts, and the United States does not dispute, that the total value of her unauthorized personal purchases should be reduced by a total of $23,063 based on, among

other things, funds returned or used to benefit the Foundation prior to the detection of HERRMANN's scheme in or about late June 2008.

20. HERRMANN further asserts, and the United States does not dispute, that, prior to the detection of HERRMANN's scheme in or about late June 2008, HERRMANN paid certain business expenses for the operation of the E-Store totaling approximately $304,267.68. Specifically, HERRMANN asserts, and the United States does not dispute, that HERRMANN paid business expenses of approximately $254,458.33 using her personal credit card and approximately $17,839.35 using her personal bank account, paid $30,970.00 directly to the partner business related to the travel and vacation packages, and paid $1,000.00 directly to the Foundation.

21. In sum, based on the facts set forth herein, the undisputed loss amount is as follows:

| | |
|---|---|
| $ 316,216.22 | Total wires and EFTs from the Foundation PayPal Account |
| $ 140,285.24 | Unauthorized personal purchases on the PayPal Credit Card |
| $ 64,600.00 | Money orders purchased and deposited to HERRMANN's personal account |
| ($ 23,063.00) | Funds returned or reimbursed to the Foundation |
| ($304,267.68) | Business expenses paid by HERRMANN from personal funds |
| $ 193,770.78 | UNDISPUTED LOSS AMOUNT |

### Wire In Furtherance of the Scheme and Artifice

22. On or about June 24, 2008, in the District of Columbia and elsewhere, defendant MARIA HERRMANN, in furtherance of and for the purpose of executing the scheme described above, and attempting to do so, did knowingly transmit and caused to be transmitted by means of wire communication in interstate commerce the following signals and sounds, that is, a $9,000 wire transfer of funds from the Foundation PayPal Account to MARIA HERRMAN's personal PayPal account, all in violation of Section 1343 of Title 18 of the United States Code.

The preceding statement of offense is a summary, made for the purpose of providing the Court with a factual basis for HERRMANN's guilty plea. This statement of the offense is not intended to constitute a complete recitation of all facts known by defendant HERRMANN, but is, instead, intended to provide the necessary factual basis for the guilty plea.

RONALD C. MACHEN JR.
United States Attorney
D.C. Bar No. 447-889

By: _____
Jonathan P. Hooks, D.C. Bar No. 468-570
Assistant United States Attorney
United States Attorney's Office
555 Fourth Street, N.W.
Washington, DC 20530

## DEFENDANT'S ACCEPTANCE

I have read every word of this Statement of Offense. Pursuant to Rule 11 of the Federal Rules of Criminal Procedure, after consulting with my attorney, I agree and stipulate to this Statement of the Offense, and declare under penalty of perjury that it is true and correct.

6/14/14
Date

Maria Herrmann
Defendant

## ATTORNEY'S ACKNOWLEDGEMENT

I have discussed this Statement of Offense with my client, Maria Herrmann, and I concur with his decision to stipulate to this Statement of the Offense.

6/14/14
Date

Judith Wheat
Attorney for Maria Herrmann